UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-0048-FDW-DSC

| | |
|---|---|
| WILLIAM K. CLINTON, | ) |
| Plaintiff, | ) |
| vs. | ) ) ORDER |
| FRANK M. BROWN, M.D., individually and/or as employee and/or agent of the Veteran's Administration Medical Center of Asheville, | ) ) ) ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and in the alternative Defendant's Motion for Summary Judgment filed on June 26, 2015. (Doc No. 10). For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss, and the alternative Motion for Summary Judgment is therefore **DENIED** as moot.

**I. BACKGROUND**

Plaintiff is a veteran of the United States military. He received an honorable discharge and is entitled to Veteran's Administration ("VA") health benefits through VA medical centers. Plaintiff became baptized into the Jehovah's Witness faith in 2005 and does not take blood products during surgical procedures.

Defendant is a board-certified orthopedic surgeon working at the Veteran's Administration Medical Center in Asheville, North Carolina ("A-VAMC"). Plaintiff alleges Defendant was a federal employee of the A-VAMC, an agency of the United States of America, and was acting in

1

the scope of his employment at the Department of Veterans' Affairs.

In 2009, Plaintiff had a total right knee replacement without receiving blood products. After continuing to suffer pain in his right knee, Plaintiff sought treatment at the A-VAMC in 2012. On June 14, 2012, Plaintiff informed several members of the A-VAMC that he was a Jehovah's Witness and would not take blood products during surgical procedures. He noted this on his official consent form dated June 14, 2012, and specified he would not take blood products even if they were necessary to save his life.

Defendant scheduled a pre-operation appointment with Plaintiff on June 19, 2012. Plaintiff brought his son, William Eric Clinton, and his cousin, William Ballard, to the appointment. At the appointment, Defendant spent forty-five minutes informing Plaintiff of the risks and nature of a bloodless procedure, including complications. Plaintiff and Defendant also discussed an alternative procedure to using blood product during surgery – "cell saver." (Doc. No. 10). Defendant explained that cell saver, used for re-infusing a patient's own blood back into patient's body during surgery, was only possible if there was no infection in Plaintiff's knee. At the time of the pre-operation appointment, Defendant argues that he could not be sure of the presence of an infection until tissue samples were taken during surgery. (Doc. No. 10). Defendant states that Plaintiff was resistant to his efforts to explain the surgical risks and did not accept that cell saver was only an option in non-infected cases. Plaintiff again stated that he would not take blood products under any circumstances after discussing the possible risks with Defendant. Plaintiff also discussed increasing pain in his hip.

Plaintiff alleges that Defendant pressed him to consent to the use of blood products in a life-threatening situation and proceeded to ask Plaintiff's son if he wanted his father to die on the

operating table. Plaintiff then alleges that Defendant shared Plaintiff's history of illegal drug use with his son, asking why his father would use illegal drugs but would not take blood if necessary. (Doc. No. 1).

Plaintiff alleges that Defendant then pressed his son to convince Plaintiff to "change his religion so Defendant could perform the operation with blood." (Doc. No. 1). Defendant argues that he challenged Plaintiff's religious beliefs, stating that many prior patients of the Jehovah's Witness faith consented to the use of blood products in life or death surgical situations after being informed of the risks. Defendant states that he always has this conversation with Jehovah's Witness patients to ensure all risks and alternatives are addressed. (Doc. No. 10).

Defendant states that he advised Plaintiff of the risks and requested he receive an MRI of his painful hip at Salisbury VA Medical Center and return two months later. Defendant states in his declaration that Plaintiff left the appointment and did not return for follow-up treatment. (Doc. No. 10). Plaintiff alleges that Defendant refused to perform the surgery, alleging that there might be an infection in the knee. In July 2014, Plaintiff sought treatment at the VA medical center in Durham, North Carolina, and is now advised he needs a replacement for his painful hip. (Doc. No. 1).

Plaintiff contends Defendant violated his First Amendment right to freedom of religion. Plaintiff alleges that Defendant intentionally mistreated him in June 2012. Plaintiff contends that as a result, he endured additional pain and suffering in his knee and seeks punitive damages. Plaintiff also alleges that he now needs a hip replacement and seeks damages. (Doc. No. 1). Plaintiff alleges that the claim of a constitutional tort is proper because there is no other avenue for which Plaintiff can recover relief in this matter. (Doc. No. 1). Although Defendant moves for

3

dismissal under Rules 12(b)(1), 12(b)(6), and summary judgment in the alternative, the core of Defendant's argument states that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

#### 1. Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) shall be granted when a federal court lacks jurisdiction over the subject matter of a lawsuit. Fed. R. Civ. P. 12(b)(1). Federal courts have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. The burden of establishing federal subject matter jurisdiction rests on the Plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The moving party should prevail on a Motion to Dismiss pursuant to a lack of federal jurisdiction if material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. Richmond, Fredericksburg & Potomac R.R. Co. v. U.S., 945 F.2d 765 (4th Cir. 1991) (citing Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987)).

#### 2. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) requires that a complaint allege sufficient facts to ascertain that a "claim is plausible rather than merely conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Plaintiffs must "state a claim that is plausible on its face," which would allow a court to draw a "reasonable inference" that a defendant could be liable for the conduct alleged in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). Ultimately, the court "…need not accept as true unwarranted inferences,

unreasonable conclusions, or arguments" laid out in the complaint. Monroe v. City of Charlottesville, 579 F.3d 380, 385-86 (4th Cir. 2009). Rather, a court must simply accept as true factual matter alleged in the complaint for purposes of stating the elements of his or her claim. Bass v. E.I. DuPont de Nemours & Co., 343 F.3d 761, 765 (4th Cir. 2003).

**B. Motion for Summary Judgment**

For a court to grant summary judgment, the moving party must show that "there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is only appropriate if the evidence is such that a reasonable jury could not return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986). A court must view the evidence in a light most favorable to the non-moving party and cannot weigh evidence or determine credibility. Jacobs v. N.C. Admin Office of the Courts, 780 F.3d 562, 569-69 (4th Cir. 2015).

### III. ANALYSIS

Plaintiff alleges that Defendant violated his First Amendment right to religious freedom and seeks monetary damages for pain and suffering and increased pain in his hip. Plaintiff asks this Court to fashion a monetary remedy against a federal employee, as the Supreme Court first created in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Defendant argues that Plaintiff's allegations do not support his claim. Defendant contends Plaintiff's claims do no state a Bivens claim as recognized by the Court. Defendant further contends that even if a Bivens claim were allowed based on Plaintiff's allegations, Defendant asks this Court to dismiss Plaintiff's suit, asserting that he has absolute immunity under the VA

5

Immunity Statute, 38 U.S.C. § 7316, and in the alternative, Defendant argues he is immune from a Bivens remedy under the Qualified Immunity Doctrine, Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

### A. When a Bivens Remedy Applies

A Bivens action is a suit for damages against a federal employee acting under the color of law for violations of a Plaintiff's constitutional rights. As such, the core purpose of a Bivens action is "deterring individual officers from engaging in constitutional wrongdoing." Correctional Services Corporation v. Malesko, 534 U.S. 61, 74 (2001). However, in Carlson v. Green, 446 U.S. 14, 18-19 (1980), the Supreme Court of the United States stated that a Bivens remedy does not lie where: (1) "Congress provided an equally effective alternative remedy and declared it to be a substitute for recovery under the Constitution, and (2) where, in the absence of affirmative action by Congress, special factors counsel hesitation." These two situations preclude a Bivens remedy if there is either a statutory scheme of recovery established by Congress, or if there are special factors that preclude a Bivens remedy.

**1. The Federal Torts Claims Act ("FTCA") as an Alternative, Existing Remedy under Bivens**

A Bivens action does not lie where "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." McCarthy v. Madigan, 503 U.S. 140, 152 (1992) (quoting Schweiker v. Chilicky, 487 U.S. 412, 423 (1988)). The FTCA is recognized as an existing, alternative remedy to a Bivens action. Although Carlson discusses that the FTCA is a less effective remedy than a Bivens action in certain cases, the Supreme Court in

subsequent cases has limited <u>Bivens</u> recovery to those discussed in <u>Malesko</u>. <u>Carlson v. Green</u>, 446 U.S. 14, 23 (1980).

Although Plaintiff asserts that a <u>Bivens</u> remedy is appropriate in this case, Defendant is correct in pointing out that a <u>Bivens</u> remedy has never been extended to a patient-physician relationship. In <u>Malesko</u>, the Supreme Court expressly restricted <u>Bivens</u> remedies to claims arising under the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution. <u>Malesko</u>, 534 U.S. 61, 67-68 (2001). The Supreme Court has expressly "declined to extend <u>Bivens</u> to a claim sounding in the First Amendment." <u>Iqbal</u>, 556 U.S. at 675. It does not matter that "[t]he creation of a <u>Bivens</u> remedy would obviously offer the prospect of relief for injuries that must now go unredressed." <u>Malesko</u>, 534 U.S. at 69 (quoting <u>Schweicker v. Chilicky</u>, 487 U.S. at 425).

Plaintiff is suing Defendant pursuant to an alleged violation of his First Amendment right to freedom of religion, an unrecognized context for a <u>Bivens</u> claim. This claim does not survive analysis under Rule 12(b)(6) for failure to state a claim for which relief can be granted. See, e.g., <u>Davis v Passman</u>, 442 U.S. 228, 243 (1979) (stating that a complaint can survive a 12(b)(6) motion to dismiss where the Plaintiff properly alleged facts that support a lack of relief for a constitutional tort except through the judiciary). Relief cannot be granted for Plaintiff's allegations because the Supreme Court of the United States expressly denied a <u>Bivens</u> remedy pursuant to the First Amendment.

In the alternative to a Fourth, Fifth, or Eighth Amendment violation, <u>Bivens</u> actions can be implied where administrative procedures and remedies have been exhausted. The Administration must deny Plaintiff's claim before he or she files in federal court. Plaintiff initially filed a claim against Defendant under the Federal Tort Claims Act of 1974. A letter from a VA paralegal dated

7

October 16, 2012, denied Plaintiff's claim, stating that his Standard Form 95 ("SF 95") was incomplete without a sum certain. (Doc. No. 10, DE D). In order to file a claim under the Federal Tort Claims Act, a potential tort claim only becomes proper when the documents allege a sum certain. (Doc. No. 10). As a result, Plaintiff and his attorney were on notice of the requirements for a claim under the Federal Tort Claims Act, but did not appear to take further action. (Doc. No. 10, DE D). Plaintiff's claim under the FTCA was not denied by the Veteran's Administration, but rather the VA informed Plaintiff his claim was incomplete.

Although the complaint on the surface alleges a constitutional tort, Plaintiff had an available, alternative remedy under the FTCA. The Court need not decide whether the two-year statute of limitations has run on Plaintiff's claims against Defendant, but even if Plaintiff's claims were time-barred under the FTCA, that does not mean a Bivens remedy should be extended in a new context where the Supreme Court has hesitated to do so. Plaintiff did not exhaust all available administrative remedies and this case should be dismissed pursuant to Rule 12(b)(1).

**2. Special Factors for a Bivens Remedy**

Even if the Court were to presume no alternative statutory scheme for recovery recognized by Congress existed for Plaintiff's claim, the second prong to preclude a Bivens action must be addressed. The United States Supreme Court cites several special factors in cases where a Bivens remedy is precluded, despite the fact there is no alternate statutory scheme in which Plaintiff can recover. For example, authorizing a Bivens remedy against a federal agency would be a "potentially enormous financial burden for the Federal Government." F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994). The Supreme Court in Bivens also cites issues of "federal fiscal policy" or the

8

imposition of liability on a congressional employee acting outside the authority delegated by Congress as special factors counseling hesitation. Bivens, 403 U.S. at 396-397.

Defendant argues that "Congress's clear preference for suits against the United States," rather than against individual doctors acting in the scope of their federal employment, should be a special factor counseling against a Bivens remedy in this case. (Doc. No. 10). This argument is convincing, and Defendant cites other statutes where Congress immunized federally-employed physicians from personal liability suits. See, e.g., 10 U.S.C. § 1089(a) (Department of Defense, National Guard, and armed services doctors immune from personal liability). In this case, special factors were not needed because there was an alternative, existing remedy recognized by Congress. The FTCA would have been sufficient to protect Plaintiff's constitutional rights, and Congress specifically intended for the FTCA to be an exclusive remedy in cases involving federally-employed physicians. Even if that were not the case, Plaintiff's allegations fail to state special factors to allow a claim under Bivens.

**B.     Immunity from a Bivens Remedy**

**1. VA Immunity Statute or Absolute Immunity**

Even if a Bivens remedy existed in this case, Defendant argues he is immune from such suit. In Carlson v. Green, 446 U.S. 14, 20 (1980), the Supreme Court stated that Congress intended the FTCA to provide an exclusive remedy for malpractice by certain government health employees, including employees of the Veteran's Administration health centers. Defendant is immune from suits invoking Bivens remedies because Congress declared the FTCA to be an exclusive remedy in cases involving the VA Immunity Statute. 38 U.S.C. § 7316. The Supreme Court has decided that comparable immunity statutes such as 42 U.S.C. § 233(a), also preclude

9

Bivens remedies against federal public health officials. Hui v. Castaneda, 559 U.S. 799, 806. See also Ingram v. Faruque, 728 F.3d 1239, 1247 (2013) (holding that the language of the statute in Hui and the VA Immunity Statute were nearly identical, and no Bivens remedy should be implied).

**2. Qualified Immunity**

Further presuming the existence of a Bivens remedy in this case, qualified immunity bars liability for Defendant. The Qualified Immunity Doctrine insulates federal employees from personal liability when a "clearly established statutory or constitutional right of which a reasonable person would have known" has not been violated. Mitchell v. Forsyth, 472 U.S. 511, 517 (1985). Although Plaintiff argues that the First Amendment violation was clearly alleged in the Complaint, Plaintiff cannot simply state that a constitutional right has been violated in order to withstand a Motion to Dismiss pursuant to Rule 12(b)(6). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court held that "where the claim is invidious discrimination in contravention of the First [ . . .] Amendment, our decisions makes clear that the plaintiff must plead and prove that the Defendant acted with discriminatory purpose." Iqbal, 556 U.S. at 676. Defendant in this case would have had to discriminate against Plaintiff "because of" his faith, and not "in spite of" it. Id. The circumstances alleged in the Complaint are not sufficiently laid out to propose purposeful discrimination and overcome the Qualified Immunity Doctrine. Therefore, Defendant is immune from personal liability even if this Court were to imply a Bivens action.

## IV. CONCLUSION

The United States Supreme Court limited a Bivens-type recovery to cases involving violations by an individual federal employee of a Plaintiff's Fourth, Fifth, and Eighth Amendment

rights. Malesko, 534 U.S. at 68-69. Here, Plaintiff's complaint fails to state a basis for a Bivens remedy, and even if the Court were to presume such remedy, Defendant is immune from suit for the reasons stated above. Although it is unfortunate, "the absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." Id., at 69. Therefore, this Court GRANTS Defendant's Motion to Dismiss, and DENIES as moot Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

IT IS THEREFORE ORDERED that the Court GRANTS Defendant's Motion to Dismiss (Doc. No. 10).

IT IS SO ORDERED.

Signed: August 19, 2015

Frank D. Whitney
Chief United States District Judge